**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMIE MAXWELL-BRENNER | : | CIVIL ACTION |
| 131 S. 18th St. | : | |
| Unite 4F | : | |
| Philadelphia, PA 19103 | : | |
| | : | |
| Plaintiff, | : | CASE NO.: |
| v. | : | |
| | : | |
| MAGNIT, LLC | : | |
| 2365 Iron Point Rd. | : | |
| Suite 270 | : | |
| Folsom, CA 95630 | : | |
| AND | : | |
| MAGNIT GLOBAL SOLUTIONS, INC. | : | |
| 2365 Iron Point Rd. | : | |
| Suite 270 | : | |
| Folsom, CA 95630 | : | |
| AND | : | |
| RIGHTSOURCING, INC | : | |
| 2365 Iron Point Rd. | : | |
| Suite 270 | : | |
| Folsom, CA 95630 | : | |
| AND | : | |
| UNIVERSAL MUSIC GROUP, INC. | : | |
| 2220 Colorado Ave. | : | |
| Santa Monica, CA 90404 | : | |
| AND | : | |
| UMG RECORDINGS, INC. | : | |
| 2220 Colorado Ave. | : | |
| Santa Monica, CA 90404 | : | |
| AND | : | |
| FAME HOUSE, INC. | : | |
| 2220 Colorado Ave. | : | |
| Santa Monica, CA 90404 | : | |
| | : | |
| Defendants. | : | |
| | : | |

## <u>CIVIL ACTION COMPLAINT</u>

Jamie Maxwell-Brenner (hereinafter referred to as "Plaintiff"), by and through her

undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1.     This action has been initiated by Plaintiff against Magnit, LLC, Magnit Global Solutions, Inc., Rightsourcing, LLC, Universal Music Group, UMG Recordings, Inc., and Fame House, Inc. (hereinafter collectively referred to as "Defendants") for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101, *et. seq.*), Family and Medical Leave Act ("FMLA" – 29 §2601 *et seq.*), and the Pennsylvania Human Relations Act ("PHRA").[1] Plaintiff asserts, *inter alia*, that she experienced unlawful workplace discrimination and retaliation, culminating in her termination from Defendants. As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

**JURISDICTION AND VENUE**

2.     This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for civil rights violations under the ADA and FMLA. There lies supplemental and/or ancillary jurisdiction over Plaintiff's state-law claims, as they arise out of the same common nucleus of operative fact(s) as Plaintiff's federal claims asserted herein.

3.     This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes. She is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC.  Plaintiff must however file her lawsuit in advance of same because of the date of issuance of her federal right-to-sue letter under the ADA. Plaintiff's PHRA claims however will mirror identically her federal claims under the ADA.

4.      Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5.      Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by filing her Charge with the EEOC, and by filing the instant lawsuit under the ADA within 90 days of receiving a right-to-sue letter from the EEOC.

**PARTIES**

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult individual, with an address as set forth in the caption.

8.      Defendants Magnit, LLC, Magnit Global Solutions, and RightSourcing, LLC (hereinafter "Defendant Magnit") are all incorporated in Delaware, and function together as a contingent workforce contractor providing services to businesses across the country.

9.      Further, upon information and belief, because of their interrelation of operations, common management, and other factors, Defendants Magnit, LLC, Magnit Global Solutions, and RightSourcing, LLC were sufficiently interrelated and integrated during Plaintiff's employment, that they may be treated as a single and/or joint employer for purposes of the instant action.

10.     Defendant Universal Music Group, Inc. is a music company and the parent company of UMG Recordings, Inc. and Fame House, Inc. (hereinafter collectively referred to "Defendant UMG").

3

11.    Further, upon information and belief, because of their interrelation of operations, common management, and other factors, Defendant Universal Music Group Inc., UMB Recordings, Inc. and Fame House, Inc. were sufficiently interrelated and integrated during Plaintiff's employment, that they may be treated as a single and/or joint employer for purposes of the instant action.

6.    Plaintiff was paid directly by Defendant Magnit, through funds that Defendant Magnit was given according to a contract with Defendant UMG.

7.    Within Defendant UMG's business, Plaintiff was supervised by individuals who worked in Defendant UMG's Fame House Division and/or UMG Recordings, Inc and Plaintiff reported to work at Defendant UMG's facilities.

8.    Plaintiff was placed by Defendant Magnit to work within Defendant UMG, and although Plaintiff was hired and paid through Defendant Magnit, Plaintiff was also treated in all functional respects as an employee while working within Defendant UMG. Defendants' management had the ability to manage Plaintiff, discipline Plaintiff, give directive to Plaintiff, and make decisions regarding Plaintiff's employment. Plaintiff was permitted to address her work concerns with both Defendants and was obligated to follow the policies of both Defendants. Thus, for the foregoing reasons, Defendants may be treated as a single and/or joint employer for purposes of the instant action.

9.    At all times relevant herein, Defendants acted by and through their agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

**FACTUAL BACKGROUND**

10.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.     Plaintiff was hired by Defendants on or about July 18, 2024, as a Senior Technical Product Manager.

12.     At all times relevant herein, Plaintiff was supervised by Vice President of Product Management, US E-Commerce, of Defendant UMG – Gavin Potts (hereinafter "Potts").

13.     In addition to Potts, Plaintiff had three other supervisors over the course of her employment with Defendants, due to her role being designated under the "Technology Department" and two (2) of her previous supervisors taking leave.

14.     In or about January of 2025, Senior Director of D2C Technology for Defendant UMG, Rocio Carvajal Lopez (hereinafter "Lopez") became Plaintiff's supervisor.

15.     Plaintiff worked for Defendants for approximately one (1) year before she was unlawfully terminated on or about July 25, 2025.

16.     During Plaintiff's employment with Defendants, she was a very hard-working and dedicated employee who was not subjected to a history of progressive discipline.

17.     Plaintiff has and continues to suffer from ADA-qualifying disabilities, including but not limited to Major Depressive Disorder, Generalized Anxiety Disorder, Post-Traumatic stress Disorder, and Attention-Deficit Hyperactivity Disorder.

18.     Despite her aforesaid disability, Plaintiff was able to perform the essential functions of her position; however, she (at times) required some reasonable accommodations.

19.     For example, as a result of her aforesaid health conditions, Plaintiff experienced chronic nerve pain, sleeplessness, and difficulty eating which (at times) limited her ability to

perform some daily life activities, including but not limited to sitting, eating, sleeping, and engaging in social interaction.

20.    Plaintiff informed Defendant's management of her aforementioned disabilities and their impact on her daily life, specifically she discussed her disabilities with Potts.

21.    In or about March of 2025, Plaintiff took a brief medical leave due to her disabilities (as a reasonable accommodation under the ADA).

22.    Additionally, in or about March of 2025, with Plaintiff's permission, Potts informed Lopez; Senior Vice President, Dan Conway (hereinafter "Conway"); and engineering manager in the technology department, John Keller (hereinafter "Keller"), about Plaintiff's health conditions.

23.    Potts informed the previously mentioned individuals that Plaintiff was working through profoundly serious and private health concerns.

24.    Defendants were aware of Plaintiff's disabilities and knew that Plaintiff did not feel prepared to return to work so quickly.

25.    However, Plaintiff felt pressure from Defendants' management to return to work from her aforesaid medical leave, or she would lose her job.

26.    Plaintiff was not offered any type of accommodations for her disabilities but returned to work on or about March 10, 2025, and continued to perform her duties to the best of her abilities.

27.    However, following Plaintiff's return to work from medical leave (discussed *supra*), she was met with hostility and discriminatory treatment, due to her disabilities and requests for/use of accommodations.

28.     For example, Plaintiff returned from her leave to significantly more work than her workload prior to her medical leave and Plaintiff's work was subjected to increased scrutiny.

29.     Despite the increased workload, Plaintiff had weekly 1:1 meetings with Potts to discuss work, projects, and general workflow, Plaintiff understood Potts was counseling Plaintiff's performance, but was told by Potts that her performance was not deficient and she did not require a Performance Improvement Plan.

30.     In or about early June of 2025, Plaintiff's manager, Potts, separated from his employment, and Plaintiff was left with no day-to-day management, as:

    a.  Lopez  (Plaintiff's purported manager) did not make time to have 1:1 meetings with Plaintiff, which left Plaintiff with no communication from Management regarding her job functions or duties.,

    b.  Lopez was based in the United Kingdom and did not visit Philadelphia often; and

    c.  When Lopez and other leadership did visit the Fame House Office in Philadelphia (where Plaintiff was based), she was not informed of their visit and was not able to speak to or receive a 1:1 meeting with Lopez.

31.     On or about July 8, 2025, Plaintiff reached out to Defendants' benefits department to apply for FMLA, a reasonable accommodation for her disabilities.

32.     Defendants have record of this because Plaintiff was included in an e-mail chain, from within the benefits department, which directed one of Defendants' employees to reach out to Plaintiff regarding FMLA and ADA accommodations.

33.     Defendants' benefits department finally reached out to Plaintiff eight (8) days later.

34. Plaintiff informed the benefits specialist that she intended to apply for FMLA as she was working closely with and under the direction of her doctor.

35. Plaintiff informed the benefits specialist that she planned to take FMLA beginning on or about August 8, 2025.

36. On or about July 8, 2025, Plaintiff confided in her co-worker (who was functionally acting as her supervisor at the time), Jessica Casey (hereinafter "Casey").

37. Plaintiff explained to Casey that Plaintiff was working with the benefits department to prepare to take medical leave on or about August 8, 2025, and that Plaintiff wished to work on a hand-off plan with Casey to ensure Plaintiff's brief departure would operate smoothly.

38. Casey, as mentioned previously, was operating as a superior to Plaintiff because she was taking on the functions of Potts' role in the company following Potts' departure.

39. Additionally, Casey reported directly to Conway, who was already aware of Plaintiff's disabilities.

40. Casey initially responded in an understanding way by acknowledging that health is very important.

41. However, Casey's tone switched swiftly, and she began to give Plaintiff more work than usual and held Plaintiff to a higher expectation as to the amount of work Plaintiff should complete within specific time frames.

42. The week Plaintiff was terminated (discussed *infra*), Plaintiff was supposed to meet with Casey to discuss the hand-off plan for Plaintiff's upcoming leave.

43. Plaintiff and Casey did not have the meeting as planned.

8

44. On or about July 24, 2025, Plaintiff received a call from Defendant Magnit explaining that Plaintiff was terminated for "performance issues."

45. Prior to this date, Plaintiff did not receive any written warnings regarding her performance nor any prior documentation of issues with her performance.

46. During the telephone call on or about July 24, 2025, Defendants' HR Specialist Laura Hoang (hereinafter "Hoang"), informed Plaintiff that she was terminated effective immediately.

47. Plaintiff informed Hoang that Plaintiff had submitted a request for medical leave as a reasonable accommodation under the ADA.

48. Upon receiving that information, Hoang stated that she would need to pause the conversation regarding the state of Plaintiff's contract (i.e., the termination of her contract), claiming that Hoang was not aware Plaintiff had submitted a request for medical leave.

49. On or about July 24, 2025, Plaintiff received an e-mail from Hoang asking Plaintiff who, within the benefits department, she had spoken to about her request.

50. Plaintiff informed Hoang that she had been speaking with Rhonda Krasnac (hereinafter "Krasnac") and Julia Nichols (hereinafter "Nichols").

51. Plaintiff asked Hoang to clarify the status of her employment, because she was confused about whether she was terminated or not.

52. Hoang responded to Plaintiff on or about July 24, 2025, at 2:00 p.m. stating "As of now you have not been terminated, I was not aware of the leave request and Nayomi is OOO this week. I see the email you sent to Nayomi as well and will be in touch asap."

53. On or about July 25, 2025, at approximately 5:25 p.m., Plaintiff received an email communication from Hoang which stated that Plaintiff's assignment with Defendant UMG was

9

terminated and therefore her employment with all Defendants was terminated, due to performance issues.

54.    Based on the foregoing, Plaintiff believes that she was terminated from her employment with Defendants in violation of state and federal law.

### Count I
### Violations of the Americans with Disabilities Act, as Amended ("ADA")
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; & [3] Failure to Accommodate)**
**-Against All Defendants-**

55.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

56.    Plaintiff suffers from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities including but not limited to sitting, eating, sleeping, and engaging in social interaction.

57.    Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendants.

58.    Plaintiff requested reasonable accommodations under the ADA, including but not limited to leave from work to treat her aforementioned health conditions, which Defendants punished Plaintiff for utilizing.

59.    Plaintiff believes and avers that her [1] actual and/or perceived disabilities; and/or [2] her record of disabilities was a motivating or determinative factor in Defendants' decision to terminate her employment.

60.    Plaintiff also believes and avers that her reasonable requests for medical accommodations were the cause of Defendants' decision to terminate her employment.

10

61.     Lastly, Plaintiff believes and avers that Defendant failed to accommodate Plaintiff and terminated her in advance of her medical leave so that it would not have to provide her with a reasonable accommodation.

62.     Plaintiff asserts that Defendants' decisions (discussed *supra*) were made in violation of the ADA for discriminatory/and or retaliatory reasons.

### Count II
### Violations of the Family and Medical Leave Act ("FMLA")
### (Retaliation & Interference)
### -Against All Defendants-

63.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

64.     Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

65.     Plaintiff requested leave for medical reasons from Defendants, her employers, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

66.     Plaintiff had at least 1,250 hours of service with Defendants during her last full year of employment.

67.     Defendants are engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

68.     Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis starting on or about July 18, 2025.

69.     Plaintiff applied or FMLA-qualifying leave to start on August 8, 2025; however, she was unable to take this leave because Defendants terminated her employment on or about July 25, 2025.

70.     Defendants committed interference and retaliation violations of the FMLA by (1) terminating Plaintiff for requesting and/or utilizing FMLA-qualifying leave; (2) terminating Plaintiff to prevent her from utilizing FMLA-qualifying leave in the future; (3)

71.     These actions as aforesaid constitute violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendants are to be prohibited from continuing to maintain their illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B.     Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/discrimination at the hands of Defendants until the date of verdict;

C.     Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.     Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G.      Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
akarpf@karpf-law.com
(215) 639-0801

Dated: August 7, 2026

13

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Jamie Maxwell-Brenner | : | CIVIL ACTION |
| v. | : | |
| | : | |
| Magnit, LLC, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court.  (See reverse side of this form for a detailed explanation of special management cases.)  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (x )

| 8/7/2026 | | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction:  Defendants place of business

---

***RELATED CASE IF ANY:***  Case Number:_____  Judge:_____

1.  Does this case involve property included in an earlier numbered suit?                                Yes ☐

2.  Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?   Yes ☐

3.  Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?   Yes ☐

4.  Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same   Yes ☐
    individual?

5.  Is this case related to an earlier numbered suit even though none of the above categories apply?         Yes ☐
    If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.  *Federal Question Cases:***

☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2.  FELA
☐ 3.  Jones Act-Personal Injury
☐ 4.  Antitrust
☐ 5.  Wage and Hour Class Action/Collective Action
☐ 6.  Patent
☐ 7.  Copyright/Trademark
☐ 8.  Employment
☐ 9.  Labor-Management Relations
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

**B.  *Diversity Jurisdiction Cases:***

☐ 1.  Insurance Contract and Other Contracts
☐ 2.  Airplane Personal Injury
☐ 3.  Assault, Defamation
☐ 4.  Marine Personal Injury
☐ 5.  Motor Vehicle Personal Injury
☐ 6.  Other Personal Injury *(Please specify)*:_____
☐ 7.  Products Liability
☐ 8.  All Other Diversity Cases:  *(Please specify)*_____
        _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒  Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐  None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MAXWELL-BRENNER, JAMIE

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS

MAGNIT, LLC, ET AL.

County of Residence of First Listed Defendant   Sacramento
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine / ☐ 368 Asbestos Personal Injury Product | | ☐ 835 Patent – Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability / Liability | | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | / ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | / ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | / ☐ 555 Prison Condition | | | |
| | / ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); FMLA (29USC2601)

Brief description of cause:
Violations of the ADA, FMLA and the PHRA.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE   8/7/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____